UNITED STATES *v.* IWAI & Co., LTD. (No. 4331) [1]

---

[1] C. A. D. 171.

United States Court of Customs and Patent Appeals, May 5, 1941

*Charles D. Lawrence*, Acting Assistant Attorney General (*John J. McDermott*, special attorney, of counsel), for the United States.
*Sharretts & Hillis* (*Arthur L. Tallman* of counsel) for appellee.

[Oral argument April 15, 1941, by Mr. McDermott and Mr. Tallman]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal by the United States from a judgment of the United States Customs Court (First Division) sustaining a protest by appellee against the classification and assessment with duty of certain merchandise by the Collector of Customs, at the port of New York. The merchandise consists of cellulose sheets which were assessed with duty at 45 cents per pound under paragraph 31 (b) (1) of the Tariff Act of 1930, which paragraph reads as follows:

PAR. 31. (b) All compounds of cellulose (except cellulose acetate, but including pyroxylin and other cellulose esters and ethers), and all compounds, combinations, or mixtures of which any such compound is the component material of chief value:

(1) In blocks, sheets, rods, tubes, powder, flakes, briquets, or other forms, whether or not colloided, not made into finished or partly finished articles, 40 cents per pound, except that transparent sheets more than three one-thousandths of one inch and not more than thirty-two one-thousandths of one inch in thickness shall be subject to duty at the rate of 45 cents per pound;

\*    \*    \*    \*    \*    \*    \*

Appellee claimed in its protest that the involved sheets are not transparent and therefore are dutiable at 40 cents per pound as provided in the same paragraph.

Upon the trial before the Customs Court appellee offered in evidence a sample of the merchandise, and it is established, both by the sample and the other evidence in the record, that the involved sheets are not transparent within the common meaning of that word. The Government admitted this and sought to establish a commercial meaning of

the word "transparent" as used in said paragraph which would include the involved sheets.

Appellee objected to all evidence respecting commercial designation upon the ground that Congress used the term "transparent" in its common meaning and therefore it was not subject to testimony relating to commercial designation.

The trial court excluded all testimony relating to commercial designation, apparently upon the ground that the word "transparent" as used in the paragraph is descriptive and therefore evidence of its commercial meaning was inadmissible.

It being established by the evidence and conceded by the Government that the involved sheets are not transparent within the common meaning of that term, the trial court held that the involved sheets are dutiable at 40 cents per pound, as claimed by appellee, and entered judgment accordingly. From this judgment the Government took this appeal.

In view of the concession of appellant that the involved sheets are not transparent within the common meaning of that word, the only controverted question before us is whether the trial court erred in excluding testimony tending to establish that the involved sheets are transparent within the commercial meaning of that word as used in paragraph 31 (b) (1) of said tariff act.

It is well established that a descriptive term in a tariff act is subject to proof of commercial designation unless it was the intent of Congress to restrict the meaning of the term used to its common meaning.

In the case of *United States* v. *Stone & Downer Co. et al.*, 16 Ct. Cust. Appls. 82, T. D. 42732, this court said:

* * * If, in the consideration of a statute, it appears, from its language or from its context, from the legislative history of the act, or from other material facts, that it was the intent of the legislative body to restrict the meaning of the words used to their common meaning, then any commercial meaning which the words employed in the act may have must yield to the legislative intent, which is, after all, the major guide to construction.

We also held in said case, citing many authorities, that:

* * * while the views of individual Members of the Congress, expressed in debate, have not been treated as competent evidence of any desired construction of a statute, the rule must be considered as modified to the extent that statements made upon the floor, in debate, by the chairman or other member representing the committee having the legislation in charge, are to be considered. * * *

*       *       *       *       *       *       *

* * * While the language of the act before us is not of doubtful meaning, it is attempted by appellee to give to it a meaning other than its ordinary one, and, it being uncertain whether the Congress intended other than the common meaning to be attached to it, such reports may properly be considered.

In ascertaining the intent of Congress, the history of the times has always been considered material and relevant. * * * This court has, on occasions, in surveying the history of the times, adverted and given note to the hearings before

legislative committees, and Notes on Tariff Revision furnished to the committees for their information. (Citing cases.)

All of the statements above quoted are applicable to the case at bar, and if it appears that Congress, in using the word "transparent," intended to restrict the meaning of the word to its common meaning, then the trial court did not err in excluding evidence of the commercial meaning of the word, even though it does not appear that the ground of exclusion of such evidence was proper; as hereinbefore noted, appellee objected upon the ground that Congress intended to exclude the commercial meaning of the word.

We therefore turn to the legislative history of paragraph 31 (b) (1) in the endeavor to ascertain whether Congress, in the enactment of said paragraph, intended to restrict the meaning of the word "transparent" to its common meaning.

The provision here in question, providing a higher rate of duty upon transparent sheets of cellulose of the stated thickness than upon sheets not transparent, appeared for the first time in the Tariff Act of 1930.

In the Summary of Tariff Information, schedule 1, page 156, prepared by the United States Tariff Commission for the use of the Committee on Ways and Means of the House of Representatives in the preparation of a bill which thereafter became the Tariff Act of 1930, we find the following:

> The most important single development within the pyroxylin industry in recent years is the use of transparent sheets for safety glass, which is made by cementing a sheet of pyroxylin between two sheets of plate or sheet glass. The resultant laminated product possesses a high degree of strength. When subjected to a blow sufficient to cause breakage of glass, the fragments of glass do not fly as they are firmly held to the pyroxylin sheet.
>
> The transparent sheets used for the manufacture of safety glass require raw materials of special purity and exceptional care in manufacture.   *   *   *

"Safety glass" is defined in Webster's New International Dictionary, 2d edition, as follows:

> safety glass. *Glass Mfg. a.* A plate consisting of two sheets of glass with an adhering transparent medium pressed between them. The plate is transparent and resists shattering. It is used in automobile windshields, etc.

Paragraph 31 (b) (1) as it now appears in the Tariff Act of 1930 was in the Bill H. R. 2667 as originally introduced in the House of Representatives. In the report of the Committee on Ways and Means to the House we find the following:

> Paragraph 31, covering pyroxylin plastics, has been revised so that articles of pyroxylin will be classified for duty in the paragraphs in which they are mentioned by name. Provision has been made for transparent sheets for safety glass, and for cellulose acetate plastics. Because of their greater cost of production, the latter products have been given a higher rate of duty than unenumerated pyroxylin products, the duties on which remain unchanged.

There does not appear to have been any debate upon this paragraph in the House.

The Senate Committee on Finance, to which the bill was referred, proposed an amendment to paragraph 31 (b) (1), retaining its phraseology but increasing the duty on transparent sheets from 45 cents per pound, as passed by the House, to 50 cents per pound.

In its report to the Senate upon the bill, the Committee stated:

Paragraph 31 (b) (1).—Pyroxylin Sheets for Safety Glass.

A recent development of great promise in the pyroxylin industry is the production of transparent sheets of pyroxylin or celluloid for use in the manufacture of safety or nonshatterable glass for automobiles which consists of a sheet of transparent pyroxylin cemented between two layers of plate or sheet glass.

The duty on transparent sheets of pyroxylin (more than three one-thousandths of 1 inch in thickness and not more than thirty-two one-thousandths of 1 inch in thickness) was increased from 45 to 50 cents per pound. Other sheets of pyroxylin, whether transparent or not, will be dutiable under (b) (1) at 40 cents per pound.

This amendment was rejected in the Senate, but the provision under consideration was debated at considerable length. While the amendment was under consideration by the Senate the Chairman of the Committee on Finance, Mr. Smoot, stated (Cong. Rec. vol. 71, part 5, p. 4874):

The most important recent development in the pyroxylin industry is the commercial production of transparent sheets of celluloid for use in safety glass, which consists of a sheet of pyroxylin cemented between two sheets of plate or sheet glass, used mostly in automobiles. The principal use of the glass is for windshields in automobiles, and many cars use the glass in side doors and windows. It is probable that this material will be used in public carriers, such as electric cars, railroad trains, and busses.

\*　　\*　　\*　　\*　　\*　　\*　　\*

The provision in paragraph 31 (b) (1)—

"except that transparent sheets more than three one-thousandths of 1 inch and not more than thirty-two one-thousandths of 1 inch in thickness shall be subject to duty at the rate of 50 cents per pound"—

covers transparent sheets used for safety glass, and that only. \*　\*　\*

In view of the foregoing legislative history of the provision, there can be no possible doubt that Congress intended to restrict the meaning of the word "transparent" to its common meaning, and to hold that any cellulose sheets of the indicated thicknesses which are not in fact transparent are embraced in the second dutiable provision of paragraph 31 (b) (1) would manifestly be contrary to the intent of Congress in its enactment.

For the reasons stated, the judgment appealed from is *affirmed*.

BLAND, Judge, dissenting: Thinks judgment should be reversed and cause remanded.